## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CHIP PACKAGING TECHNOLOGIES, LLC, | |
| *Plaintiff*, | Civil Action No. |
| v. | **JURY TRIAL DEMANDED** |
| RENESAS ELECTRONICS CORPORATION, | |
| *Defendant*. | |

### COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES
### AND DEMAND FOR JURY TRIAL

Plaintiff Chip Packaging Technologies, LLC ("Chip Packaging" or "Plaintiff") files this Complaint for Patent Infringement and Damages against Renesas Electronics Corporation ("Renesas" or "Defendant") and alleges as follows:

### THE PARTIES

1.      Chip Packaging is the current owner and assignee of the Asserted Patents.

2.      Chip Packaging is a Texas limited liability company with its principal place of business located at 5830 Granite Parkway, Suite #100-216, Plano, TX 75024.

3.      Upon information and belief, Renesas Electronics Corporation is a corporation formed under the laws of Japan, with a principal place of business at TOYOSU FORESIA, 3-2-24 Toyosu, Koto-ku, Tokyo 135-0061, Japan. Renesas is a global semiconductor manufacturer that designs, develops, manufactures, markets, and sells semiconductor products, including power MOSFETs, GaN (Gallium Nitride) power devices, microcontrollers, load switches, and related

integrated circuits.  Renesas's semiconductor products are imported, offered for sale, and sold in the United States and in this District.

## JURISDICTION AND VENUE

4.      This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant. Defendant conducts business and has committed acts of patent infringement in this Judicial District, the State of Texas, and elsewhere in the United States.

6.      Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

7.      Defendant has infringed the Asserted Patents within this District and the State of Texas by making, using, distributing, marketing, offering, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the Asserted Patents, including the Accused Products. Defendant, directly and through intermediaries, makes, uses, offers, imports, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in or into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

8.      This Court has personal jurisdiction over Defendant pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*

9.      Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within this District and the

State of Texas, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Texas.

10.    This Court also has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing infringing products to the residents of this District that Defendant knew would be used within this District, and by soliciting business from the residents of this District.

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## THE ASSERTED PATENTS

12.    On September 4, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,258,611 (the "'611 Patent") entitled "Leadframe Structure For Electronic Packages."

13.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '611 Patent, including the right to assert all causes of action arising under the '611 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

14.    On February 16, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,263,299 (the "'299 Patent") entitled "Exposed Die Clip Bond Power Package."

15.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '299 Patent, including the right to assert all causes of action arising under the '299 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

16.    On January 29, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,192,837 (the "'837 Patent") entitled "Multi-Via Redistribution Layer For Integrated Circuits Having Solder Balls."

17.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '837 Patent, including the right to assert all causes of action arising under the '837 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

18.    On February 4, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,643,189 (the "'189 Patent") entitled "Packaged Semiconductor Die With Power Rail Pads."

19.    Chip Packaging is the owner and assignee of all right, title, and interest in and to the '189 Patent, including the right to assert all causes of action arising under the '189 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

20.    Chip Packaging has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents.

## FACTUAL ALLEGATIONS

21.    The Asserted Patents relate to groundbreaking improvements to semiconductor packaging technologies.

22.    The technology in U.S. Patent No. 8,258,611 ("the '611 Patent") was developed by Ronald Schravendeel and Peter Schelwald of NXP B.V.

23.    The technology in U.S. Patent No. 9,263,299 ("the '299 Patent") was developed by Leonardus Antonius Elisabeth van Gemert and Emil Casey Israel of NXP B.V.

24.    The technology in U.S. Patent No. 10,192,837 ("the '837 Patent") was developed by Chung Hsiung Ho, Wayne Hsian, Richard Te Gan, and James Raymond Spehar of NXP B.V.

25.     The technology in U.S. Patent No. 8,643,189 ("the '189 Patent") was developed by Boon Yew Low, Navas Khan Oratti Kalundar, and Lau Chu Tan of Freescale Semiconductor, Inc.

26.     On information and belief, each of the Renesas products identified herein, including the Renesas SuperGaN GaN FET product line, the Renesas REXFET Power MOSFET product line, the Renesas GreenFET Load Switch product line, and other Renesas semiconductor product lines, have been available for purchase in the United States, including but not limited to, directly from Renesas, through Renesas's website, and/or through Renesas-authorized Americas distributors. By way of example only, the Renesas SuperGaN GaN FET products are available for purchase in the United States, including but not limited to through Renesas's website and through Renesas-authorized Global or Americas distributors:



*See* https://www.renesas.com/en/products/power-discretes/gan-power-discretes/product-selector?product-id=TP65H070G4 (last visited 2/11/2026).



*See* https://www.digikey.com/en/products/filter/transistors/fets-mosfets/single-fets-mosfets/278?s=N4IgTCBcDaIC4AcBsBWAEgBgBgOwYOIBYAbAZxxAF0BfIA (last visited 2/11/2026).

27.     As another example, the Renesas REXFET Power MOSFET product line are available for purchase in the United States, including but not limited to through Renesas's website and through Renesas-authorized Global or Americas distributors:



*See* https://www.renesas.com/en/products/rbe029n10r1szn6/part-details/rbe029n10r1szn6-hb0 (last visited 2/11/2026).

28.    As another example, the Renesas GreenFET Load Switch product line are available for purchase in the United States, including but not limited to through Renesas's website and through Renesas-authorized Global or Americas distributors:



*See* https://www.renesas.com/en/products/slg59m1746c?tab=product-options&part-status=Active (last visited 2/11/2026).

29.     As another example, the Renesas SuperGaN GaN FET product line, including the TP65H150BG4JSG 650V SuperGaN GaN FET, are available for purchase in the United States, including but not limited to through Renesas's website and through Renesas-authorized Global or Americas distributors:



*See* https://www.renesas.com/en/products/power-discretes/gan-power-discretes/product-selector?product-id=tp65h150 (last visited 2/11/2026).

## FIRST COUNT
### (Infringement of U.S. Patent No. 8,258,611)

30.    Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-29 of the Complaint as though fully set forth herein.

31.    The claims of the '611 Patent are valid and enforceable.

32.    Renesas has and continues to directly infringe the '611 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products including, but not limited to, products that satisfy each and every limitation of one or more claims of the '611 Patent. Upon information and belief, such products include at least the Renesas SuperGaN GaN FET product line, including but not limited to TP65H070G4LSGB-TR and all other products with delamination barrier structures that are not colorably different.

9

33.    For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '611 Patent.

34.    Claim 1 of the '611 Patent recites:

1. A leadframe structure for an electronic package, the leadframe structure comprising:
      a die-pad configured and arranged for die attachment,
      a bonding area and
      a barrier area having a barrier structure connecting the die-pad and the bonding area and configured and arranged with a length and width, at a connection between the barrier and the die-pad, that mitigates the delamination of a moulding compound from the barrier as the moulding compound delaminates from a portion of the die-pad adjacent the connection between the barrier and the die pad.

'611 Patent, Cl. 1.

35.    For example, the Renesas TP65H070G4LSGB-TR is a leadframe structure for an electronic package that satisfies each claim element as shown in the package photos and X-ray imaging below:

  

36.    On information and belief, the Renesas TP65H070G4LSGB-TR includes a die-pad configured and arranged for die attachment.  The annotated X-ray images below show a die-pad configured and arranged for die attachment in red:



37.    On information and belief, the Renesas TP65H070G4LSGB-TR includes a bonding

area.  The annotated X-ray images below show a bonding area in blue:



38.    On information and belief, the Renesas TP65H070G4LSGB-TR includes a barrier area having a barrier structure connecting the die-pad and the bonding area and configured and arranged with a length and width, at a connection between the barrier and the die-pad, that mitigates the delamination of a moulding compound from the barrier as the moulding compound delaminates from a portion of the die-pad adjacent the connection between the barrier and the die pad.  The annotated X-ray images below show the claimed barrier structure in the barrier area in green:





39.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '611 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

40.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '611 Patent, including claim 1, by knowingly and intentionally inducing others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users to directly infringe, either literally or under the

doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

41.     Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '611 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '611 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

42.     Defendant has induced infringement by others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '611 Patent, but while remaining willfully blind to the infringement.

43.     Defendant is not licensed or otherwise authorized to practice the claims of the '611 Patent.

44.     Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '611 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

45.     As a result of Defendant's infringement of the '611 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## SECOND COUNT
## (Infringement of U.S. Patent No. 9,263,299)

46.     Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-45 of the Complaint as though fully set forth herein.

14

47.     The claims of the '299 Patent are valid and enforceable.

48.     Renesas has and continues to directly infringe the '299 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '299 Patent. Upon information and belief, such products include at least the Renesas REXFET Power MOSFET product line, including but not limited to E029N10 and all other products with exposed die clip bond power package structures that are not colorably different.

49.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '299 Patent.

50.     Claim 1 of the '299 Patent recites:

1. A method for packaging an integrated circuit (IC) device, the method comprising:
> mounting a plurality of active device die, into predetermined positions, onto a temporary carrier, each said active device die having bond pads, each of said active device die having a solderable conductive surface on its underside; and having been subjected to back-grinding to a prescribed thickness;
> dispensing a solder paste onto the bond pads on the plurality active device die;
> attaching a lead frame to the temporary carrier, the lead frame having an array of device positions which correspond to the predetermined positions of the plurality of active device die, wherein upper lead frame portions contact the solder paste present on the bond pads and lower lead frame portions contact the temporary carrier; and
> reflowing the solder so that a connection is made between the upper lead frame portions and the bond pads of the plurality of active device die.

'299 Patent, Cl. 1.

51.     For example, the Renesas REXFET Power MOSFET implements a method for packaging an integrated circuit (IC) device. The integrated circuit (IC) device of the Renesas is photographed below:



52.     On information and belief, the Accused Products are manufactured using a process that mounts a plurality of active device die (identified in blue), into predetermined positions, onto a temporary carrier where each active die has bond pads (identified in red).  The images below are X-rays and cross-sections of the product, with blue and red identifiers added as annotations.



53.    On information and belief, within the Accused Products each active die has a solderable conductive surface on its underside, for example a surface made of titanium, nickel, copper, and/or gold, on its underside (identified in orange); and has been subjected to back-grinding to a prescribed thickness (identified in yellow).  The images below are X-rays and cross-sections of the product, with orange and yellow identifiers added as annotations.



54. On information and belief, the Accused Products are manufactured using a process that dispenses a solder paste (identified in pink), such as one made of (for example) tin, silver, copper, and/or lead, onto the bond pads on the plurality active device die. The images below are X-rays and cross-sections of the product, with pink, orange, and yellow identifiers added as annotations.



55.    On information and belief, the Accused Products are manufactured using a process that attaches a lead frame to the temporary carrier, the lead frame having an array of device positions which correspond to the predetermined positions of the plurality of active device die.  On information and belief, Defendant manufactures the Accused Products on a temporary carrier in an array with a unified lead frame, with each Accused Product initially formed as a part of an undiced (or uncut) array. The images below are a demonstrative illustration of how, on information and belief, the Accused Products appear prior to separation.  Defendant's processing steps are not public and are within the exclusive control of Defendant. On information and belief, an undiced lead frame (highlighted as a large blue rectangle in the demonstrative illustration below) has an array of device positions corresponding to a predetermined arrangement of the plurality of active device die (highlighted as six pink boxes in the demonstrative illustration below). After the array is diced, each of these device positions will correspond to one of the Accused Products photographed above.



56.    On information and belief, the Accused Products are manufactured using a process wherein the upper lead frame portions contact the solder paste present on the bond pads (identified in green).  The images below are X-rays and cross-sections of the product, with pink and green identifiers added as annotations.



57.    On information and belief, the Accused Products are manufactured using a process wherein the lower lead frame portions contact the temporary carrier (identified in purple).  The images below are X-rays and cross-sections of the product, with pink, purple, and green identifiers added as annotations.



58.    On information and belief, the Accused Products are manufactured using a process that reflows the solder so that a connection is made between the upper lead frame portions and the bond pads of the plurality of active device die.  For example, EDS mapping shows a silicon (Si) die with lead (Pb) based solder reflowed on top and bottom surfaces:



59.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '299 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

60.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '299 Patent, including claim 1, by knowingly and intentionally inducing others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

61.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '299 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '299 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

62.    Defendant has induced infringement by others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '299 Patent, but while remaining willfully blind to the infringement.

63.    Defendant has and continues to infringe one or more claims of the '299 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

64.    Defendant is not licensed or otherwise authorized to practice the claims of the '299 Patent.

65.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '299 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

23

66.     As a result of Defendant's infringement of the '299 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

**THIRD COUNT**
**(Infringement of U.S. Patent No. 10,192,837)**

67.     Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-66 of the Complaint as though fully set forth herein.

68.     The claims of the '837 Patent are valid and enforceable.

69.     Renesas has and continues to directly infringe the '837 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products including, but not limited to, products that satisfy each and every limitation of one or more claims of the '837 Patent. Upon information and belief, such products include at least the Renesas GreenFET Load Switch product line, including but not limited to SLGM1746C and SLG59M1746C, and all other products with multi-via redistribution layer structures that are not colorably different.

70.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 11 of the '837 Patent.

71.     Claim 11 of the '837 Patent recites:

11. An article of manufacture comprising an integrated circuit (IC), the IC comprising:
       a top metal conducting layer;
       a passivation layer on top of the top conducting layer, wherein the passivation layer comprises openings to the top conducting layer;

a redistribution layer on top of the passivation layer, wherein material of the redistribution layer fills the openings in the passivation layer to form via structures electrically connecting the redistribution layer to the top conducting layer; and

a solder ball placed on top of the redistribution layer that has a footprint that spans a first plurality of the via structures of the redistribution layer such that electricity can flow vertically between the solder ball and the top conducting layer through the redistribution layer and the first plurality of the via structures, and

wherein the redistribution layer electrically connects the solder ball to at least one other solder ball.

'837 Patent, Cl. 11.

72.    For example, the Renesas SLGM1746C Load Switch is an article of manufacture comprising an integrated circuit. The integrated circuit of the Renesas SLGM1746C is photographed below:

  

73.    On information and belief, the Renesas SLGM1746C includes a top metal conducting layer (annotated in dark blue) and a passivation layer (annotated in dark green) on top of the top conducting layer, wherein the passivation layer comprises openings to the top conducting layer (annotated in red).  The images below are SEM cross-sections of the product, with blue, green, and red identifiers added as annotations.



74.     On information and belief, the Renesas SLGM1746C includes a redistribution layer (annotated in yellow) on top of the passivation layer (annotated in dark green), wherein material of the redistribution layer fills the openings (annotated in red) in the passivation layer to form via structures (annotated in pink) electrically connecting the redistribution layer to the top conducting

layer (annotated in dark blue).  The images below are SEM cross-sections of the product, with blue, green, red, yellow, and pink identifiers added as annotations.



75.    On information and belief, the Renesas SLGM1746C includes a solder ball (annotated in light blue) placed on top of the redistribution layer (annotated in yellow) that has a

footprint (annotated in blue) that spans a first plurality of the via structures (annotated in pink) of the redistribution layer such that electricity can flow vertically between the solder ball and the top conducting layer (annotated in dark blue) through the redistribution layer and the first plurality of the via structures.  The images below are SEM cross-sections of the product, with dark blue, blue, light blue, green, red, yellow, and pink identifiers added as annotations.



76.    On information and belief, the Renesas SLGM1746C includes a redistribution layer (annotated in yellow) wherein the redistribution layer electrically connects (annotated with a red arrow) the solder ball (annotated in light blue) to at least one other solder ball (annotated in orange).

The images below are photos and SEM cross-sections of the product, with light blue, red, yellow, and orange identifiers added as annotations.



77.     Fact and expert discovery are expected to confirm that the Accused Products infringe the '837 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

78.     Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '837 Patent, including claims 11 and 14, by knowingly and intentionally inducing others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

79.     Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '837 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '837 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

80.     Defendant has induced infringement by others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '837 Patent, but while remaining willfully blind to the infringement.

81.     Defendant has and continues to infringe one or more claims of the '837 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

82.     Defendant is not licensed or otherwise authorized to practice the claims of the '837 Patent.

83.     Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '837 Patent, whether literally or under the doctrine of equivalents, including without limitation claims 11 and 14.

84.     As a result of Defendant's infringement of the '837 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## FOURTH COUNT
### (Infringement of U.S. Patent No. 8,643,189)

85.     Chip Packaging incorporates by reference the allegations set forth in Paragraphs 1-84 of the Complaint as though fully set forth herein.

86.     The claims of the '189 Patent are valid and enforceable.

87.     Renesas has and continues to directly infringe the '189 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products including, but not limited to, products that satisfy each and every limitation of one or more claims of the '189 Patent. Upon information and belief, such products include at least the Renesas SuperGaN GaN FET product line, including but not limited to TP65H150BG4JSG and all other products with power rail pad structures that are not colorably different.

88.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 15 of the '189 Patent.

89.     Claim 15 of the '189 Patent recites:

15. A semiconductor die, comprising:
        a die support mounting surface and an opposite die connection pad surface with associated die connection pads, wherein the die connection pads are circuit nodes of the semiconductor die; and
        at least one power rail pad on the die connection pad surface, the power rail pad having a surface area larger than surface areas of the die connection pads,

wherein the die connection pads are integral with the semiconductor die and wherein the power rail pad is a non-circuit node of the semiconductor die.

'189 Patent, Cl. 15.

90.    For example, the Renesas TP65H150BG4JSG SuperGaN GaN FET is a semiconductor die comprising the claimed elements. The semiconductor die of the Renesas TP65H150BG4JSG is illustrated in the photographs and X-ray below:

  

91.    On information and belief, the Renesas TP65H150BG4JSG includes semiconductor die (annotated in red) comprising a die support mounting surface (annotated in green) and an opposite die connection pad surface (annotated in blue) with associated die connection pads (annotated in pink).  The image below is a photo of the product, with red, green, blue, and pink identifiers added as annotations.



92.    On information and belief, the Renesas TP65H150BG4JSG includes die connection pads that are circuit nodes (identified in brown) of the semiconductor die (identified in red).  The image below is a circuit diagram of the cascode device structure of the Accused Product found in the Renesas TP65H150BG4JSG Datasheet with brown and red identifiers added as annotations.



**Cascode Device Structure**

93.    On information and belief, the Renesas TP65H150BG4JSG includes at least one power rail pad on the die connection pad surface, the power rail pad (identified in purple) having a surface area larger than surface areas of the die connection pads (identified in green).  The image below is a photo of the product, with purple and green identifiers added as annotations.



94.    On information and belief, within the Renesas TP65H150BG4JSG, the die connection pads are integral with the semiconductor die and the power rail pad (identified in purple) is a non-circuit node (identified in light blue) of the semiconductor die (identified in red). The images below are photos of the product and a circuit diagram of the cascode device structure of the Accused Product found in the Renesas TP65H150BG4JSG Datasheet, with purple, light blue, and red identifiers added as annotations.



**Cascode Device Structure**

95.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '189 Patent, for which further evidence may lie in whole or in part in technical documents to which Chip Packaging does not presently have access.

96.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '189 Patent, including claim 15, by knowingly and intentionally inducing others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users to directly infringe, either literally or under the

doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products.

97.     Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '189 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '189 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

98.     Defendant has induced infringement by others, including third-party semiconductor foundries, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '189 Patent, but while remaining willfully blind to the infringement.

99.     Defendant is not licensed or otherwise authorized to practice the claims of the '189 Patent.

100.    Thus, by its acts, Defendant has injured Chip Packaging and is liable to Chip Packaging for directly and/or indirectly infringing one or more claims of the '189 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 15.

101.    As a result of Defendant's infringement of the '189 Patent, Chip Packaging has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and seeks relief from Defendant as follows:

a. For judgment that Defendant has infringed and continues to infringe the claims of the '611, '299, '837, and '189 Patents;

b. For an accounting of all damages sustained by Plaintiff as a result of Defendant's acts of infringement;

c. For a mandatory future royalty payable by Defendant in relation to each sale of an Accused Product that is found to infringe one or more of the Asserted Patents and all future products which are not colorably different from products found to infringe;

d. For a judgment and order requiring Defendant to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '611, '299, '837, and '189 Patents as provided under 35 U.S.C. § 284;

e. For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

f. For such other and further relief in law and in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: February 17, 2026                    Respectfully Submitted,

*/s/ Garland Stephens by permission Andrea L. Fair*
Garland Stephens (Texas Bar No. 24053910)
garland@bluepeak.law
Justin Constant (Texas Bar No. 24067551)
justin@bluepeak.law
Robert Magee
robert@bluepeak.law
Ameet Modi
modi@bluepeak.law

Natalie Lieber
lieber@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd.
PMB 8160
Houston, TX 77025
Tel: (281) 972-3036

*Of Counsel:*

Andrea L. Fair
State Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**ATTORNEYS FOR PLAINTIFF**